# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| **JAMES GREGORY YORK,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 1:19-cv-00098 |
| ) | |
| **CITY OF LEWISBURG, TENNESSEE, et al.,** ) | **JUDGE CAMPBELL** |
| ) | **MAGISTRATE JUDGE HOLMES** |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the Court is Defendant Kylar Gentry's Motion for Summary Judgment. (Doc. No. 82). Plaintiff James Gregory York filed a Response (Doc. No. 99) and Defendant Gentry filed a Reply (Doc. No. 100). For the reasons discussed below, the motion will be **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At the conclusion of a traffic stop for minor traffic violations, Lewisburg Police Officer Kylar Gentry ("Officer Gentry") punched Plaintiff James Gregory York ("York") in the face and then arrested him for assault and resisting arrest. (Officer Gentry Body Cam #1 at 5:39-5:47; Corporal Binkley Dash Cam at 13:41-13:47; Doc. No. 98 ¶ 59). A state court found probable cause for the charges at a preliminary hearing, and a grand jury issued true bills on the charges. (Doc. No. 98 ¶¶ 59-65). The assault and resisting arrest charges were retired. (*Id*. ¶ 66; Doc. Nos. 36-1, 36-2). York filed suit against Officer Gentry alleging violations of his constitutional rights under 42 U.S.C. § 1983 (Counts I, II, III, IV, V) and violations of Tennessee law (Counts VII, VIII, IX,

X, XI). (*See* Second Amended Complaint, Doc. No. 35).[1] Officer Gentry moved for summary judgment as to all claims against him.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). "But where, as here, there is 'a videotape capturing the events in question,' the court must 'view[ ] the facts in the light depicted by the videotape.'" *Green v. Throckmorton*, 681 F.3d 853, 859–60 (6th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 378–81 (2007)). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must

---

[1] Count VI is York's Section 1983 claim against the City of Lewisburg, Tennessee. (*Id.*).

be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## III. ANALYSIS

York's federal law claims against Officer Gentry are brought under 42 U.S.C. § 1983, which provides that "an individual may bring a private cause of action against anyone who, acting under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted). Accordingly, to survive summary judgment in a Section 1983 action, the plaintiff must demonstrate a genuine issue of material fact that a person acting under color of state law deprived them of a right secured by the Constitution or laws of the United States.

York claims that Officer Gentry violated his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to be free from use of excessive force, malicious prosecution, false arrest, and unlawful search and seizure. (*See* Doc. No. 35; Doc. No. 99 at 1). The Sixth Circuit has held the Fourth Amendment, not the Fifth or Fourteenth, is the proper vehicle to "define the 'process that is due' for seizures of persons or property in criminal cases[.]" *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005) (internal citations omitted).[2] Thus, the York's Section 1983 claims against Gentry (Counts I, II, III, IV, and V) are for alleged violations of his rights secured by the Fourth Amendment.

Through the pending motion, Officer Gentry argues that he is entitled to summary judgment because: (1) he is entitled to qualified immunity for his use of force; (2) collateral estoppel bars York's false arrest and malicious prosecution claims; and (3) the pat down did not violate York's rights. The Court will address Officer Gentry's arguments in turn.

---

[2] York concedes he has no causes of action premised on the Fifth Amendment. (Doc. No. 99 at 19).

3

## A. Qualified Immunity – Excessive Use of Force

Officer Gentry argues that he is entitled to qualified immunity for his use of force in detaining and arresting York. Courts employ the following two-part test to determine whether a government official is entitled to qualified immunity: (1) whether the alleged facts, viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right, and (2) whether that constitutional right was clearly established. *See Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678, 695 (6th Cir. 2020). "If either prong is not met, then the government officer is entitled to qualified immunity." *Doe v. Miami Univ.*, 882 F.3d 579, 604 (6th Cir. 2018).

Whether an officer's use of force violates the Fourth Amendment turns on "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them[.]" *Graham v. Connor*, 490 U.S. 386, 397 (1989). This is a totality-of-the-circumstances inquiry that assesses the reasonableness of the use of the force from the perspective of a reasonable officer on the scene. *See Hughey v. Easlick*, 3 F.4th 283, 289 (6th Cir. 2021). Three factors guide this analysis: the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officer or others; and whether he is actively resisting arrest or attempting to evade arrest by flight. *See Williams v. Maurer*, 9 F.4th 416, 438 (6th Cir. 2021). "The bottom-line inquiry is whether the totality of the circumstances justifies a particular level of force." *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 865 (6th Cir. 2020) (citation and internal quotations omitted).

In the present case, the "severity of the crime at issue" factor weighs against the use of force. York's offenses – driving without a valid license, proof of insurance, and functioning running lights – were minor. None of the offenses involved physical violence. Additionally, Officer Gentry informed York that he would be receiving a citation and that no one was getting arrested. (Gentry Body Cam #1 at 0:54-1:54). The "immediate threat" weighs in favor of the use

of force because if York had been armed – which, he was not – he would have posed an immediate threat to the safety of the officer and others. The third factor, whether York was actively resisting arrest or attempting to evade arrest by flight, weighs against the use of force because Officer Gentry did not tell York that he was under arrest. Viewing the video evidence in the light most favorable to York, a reasonable jury could find that York was not actively resisting arrest. *See, e.g.*, *Guilford v. Frost*, 269 F. Supp. 3d 816, 834 (W.D. Mich. 2017) ("a jury could conclude that Guilford did not "actively resist" arrest because Guilford simply reacted (as any person would) to Frost jumping on his back without informing him he was under arrest[.]"); *Grawey v. Drury*, 567 F.3d 302, 311 (6th Cir. 2009) (noting that a suspect does not "resist" arrest when he has not even been "told [he] [was] under arrest"); *Adams v. Metiva*, 31 F.3d 375, 385 (6th Cir. 1994) ("whether plaintiff was actively resisting arrest or attempting to evade arrest is contested as plaintiff alleges he was never told he was under arrest[.]"). In light of the relevant factors, viewing the video evidence in the light most favorable to York, a reasonable jury could conclude that York's actions did not justify Officer Gentry punching him in the face.

The Court next considers whether a reasonable officer would have known on December 22, 2018, that punching York in the face under these circumstances violated a clearly established federal right. *See Rieves*, 959 F.3d at 696. Since a jury could conclude York did not actively resist arrest, the answer is yes. Officer Gentry correctly notes that York does not cite to any cases showing that the law was clearly established in December 2018 that Officer Gentry could not use the force that he used against York. (*See* Doc. No. 100 at 4). However, for over a decade, Sixth Circuit law has clearly established that "officers cannot use force, including pepper spray, on a detainee who has been subdued, is not told he is under arrest, or is not resisting arrest." *Grawey*, 567 F.3d at 314; *see also Coffey v. Carroll*, 933 F.3d 577, 589 (6th Cir. 2019) ("A suspect has a

5

clearly established constitutional right to be free from the use of physical force by police officers when he is not resisting efforts to apprehend him.") (citing *Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012)). Thus, summary judgment will not be granted on York's excessive use of force claim on qualified immunity grounds.[3]

**B.     Collateral Estoppel – False Arrest and Malicious Prosecution**

Officer Gentry contends that York's federal law claims for false arrest and malicious prosecution are barred by collateral estoppel. Collateral estoppel, also referred to as issue preclusion, is a judicially created affirmative defense that prevents a party from relitigating an issue of law or fact that a prior case has already resolved. *See George v. Hargett*, 879 F.3d 711, 718 (6th Cir. 2018); *Gilbert v. Ferry*, 413 F.3d 578, 579 (6th Cir. 2005). Because collateral estoppel is an affirmative defense, Officer Gentry bears the burden of proving it applies in this case. *See Spilman v. Harley*, 656 F.2d 224, 229 (6th Cir. 1981). Generally, four requirements must be met before issue preclusion applies: "(1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Ga.-Pac. Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012).

Officer Gentry does not address the foregoing elements or explain how they are satisfied in the present case. Instead, he asserts that York is precluded from relitigating the issue of probable cause because the state court found probable cause at the preliminary hearing and a grand jury returned true bills on the charges. (Doc. No. 85 at 9). The cases Officer Gentry relies on provide

---

[3]     As Officer Gentry is not entitled to qualified immunity on this claim, he is also not entitled to qualified immunity on York's state law claim for assault and battery (Count X). (*See* Doc. No. 85 at 19).

that a finding of probable cause in state court and an indictment of the accused by a grand jury *may* preclude a finding of lack of probable cause in a subsequent civil action. *See Ballanger v. City of Chattanooga*, No. 1:11-CV-107, 2012 WL 3597417, at *5 (E.D. Tenn. Aug. 20, 2012) (citing *Yant v. Arrow Exterminators, Inc.*, 1999 WL 43239 at *3 (Tenn. Ct. App. Feb.1, 1999); *Day v. Ingle's Markets, Inc.*, No. 2:01-CV-325, 2006 WL 239290, at *3 (E.D. Tenn. Jan. 25, 2006)). These cases also provide that preclusion does not attach to an earlier probable cause determination where there are allegations and evidence that it was influenced by falsified evidence. *See id*.

In his response, York asserts that the state court's probable cause determinations were influenced by Officer Gentry and Corporal Binkley falsely testifying that Officer Gentry saw York reach back into vehicle, grab something off the dash, and then put it in his pocket. (Doc. No. 99 at 14-15). Officer Gentry does not deny testifying at the preliminary hearing as York claims, and the parties agree that there is a factual dispute as to whether Officer Gentry observed York reach back into his vehicle, retrieve something, and put that something in his pocket. (*See* Doc. No. 100 at 2). Viewing the video evidence in the light most favorable to York, a reasonable jury could conclude that Officer Gentry did not observe York reach into his vehicle, retrieve something, and put it in his pocket. (*See* Gentry Body Cam #1 at 5:10-5:30). If Officer Gentry did not observe these actions but testified under oath that he did, as York claims, such testimony could be considered false. Nothing in the record suggests that the state court did not rely on the testimony at issue in making the probable cause determinations. The Court finds that there is a material question of fact as to whether the earlier probable cause findings were influenced by falsified evidence. Accordingly, for the foregoing reasons, summary judgment will not be granted on collateral estoppel grounds.

C.   **The Pat Down**

Officer Gentry argues that York's claim regarding the pat down should be dismissed because the pat down search did not violate York's constitutional rights. During a traffic stop, an officer may perform a precautionary search, known as a frisk or pat down, only when they have reasonable suspicion that the person may be armed and dangerous. *See United States v. Pacheco*, 841 F.3d 384, 390 (6th Cir. 2016) (citing *Knowles v. Iowa*, 525 U.S. 113, 118 (1998)); *United States v. Noble*, 762 F.3d 509, 521 (6th Cir. 2014). Reasonable suspicion for a pat down during a traffic stop is based on the totality of the circumstances, and it exists if a reasonably prudent person in the circumstances would be warranted in the belief that their safety or that of others was in danger. *See Noble*, 762 F.3d at 521–22 (citations omitted). It is an objective standard that requires a particularized and objective basis for suspecting that the particular person is armed and dangerous. *Id*. at 522. Officer Gentry asserts that reasonable suspicion existed in the present case based on the following factors:

> [1] Corporal Binkley's comments that York told her that he could go five years on an expired driver's license; [2] York's resistant and hostile behavior when asked simple questions; [3] York getting out of his vehicle on his own accord and reaching back inside and retrieving something; [4] York putting his left hand in his front left pants pocket when asked if he had any weapons on him; and [5] York's abrasive responses to questions about whether he had any weapons on him.

(Doc. No. 85 at 11-12). The first and second factors relate to York seeming nervous, which the Sixth Circuit has previously given little weight. *See United States v. Bell*, 555 F.3d 535, 540 (6th Cir. 2009). Regarding the third factor, as discussed above, there is a dispute of fact as to whether Officer Gentry observed York reach back inside the vehicle and retrieve something. However, Officer Gentry stated multiple times on the scene that he initiated the pat down because York had exited his vehicle. (Officer Gentry Body Cam #2 at 1:47-1:56; 3:37-3:54; 10:02-10:10). As there

8

is no indication that York was instructed to remain in his vehicle, this factor is entitled to little or no weight. York moving his left hand in front of his left pants pocket is the only factor that Officer Gentry points to with citation to Sixth Circuit authority that it is a valid consideration in forming reasonable suspicion. *See Pacheco*, 841 F.3d at 393-94 (fidgeting with pockets as if concealing something is a factor supporting reasonable suspicion for pat down search). The Sixth Circuit has explained the resolution of the reasonable-suspicion analysis in these circumstances:

> Although the reasonable-suspicion calculation examines the totality of the circumstances, even where the government points to several factors that this court has "recognized as valid considerations in forming reasonable suspicion," they may not together provide reasonable suspicion if "they are all relatively minor and...subject to significant qualification," particularly where the "case lacks any of the stronger indicators of criminal conduct that have accompanied these minor factors in other cases."

*Bell*, 555 F.3d at 540 (citation omitted). The Court cannot conclude that Officer Gentry had reasonable suspicion to search York as a matter of law. Accordingly, summary judgment will not be granted on York's claim regarding an illegal pat down.

## IV. CONCLUSION

For all of the foregoing reasons, Officer Gentry's Motion for Summary Judgment (Doc. No. 82) will be **DENIED**. The Court will retain supplemental jurisdiction over York's state law claims (Counts VII, VIII, IX, X, XI).

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE